Argued October 19, modified December 12, 1922, rehearing denied January 9, 1923.

## SCHMITT *v.* SCHMITT.

(210 Pac. 722.)

**Divorce—Under Decree That Child shall not be Taken Outside Court's Jurisdiction, He may be Taken Any Place in State.**

1. Under a decree awarding the temporary custody of a child to its mother and directing that he shall not be taken outside the jurisdiction of the court, he may be taken to any place within the state.

**Divorce—Facts Held to Warrant Giving Custody of Three Year Old Boy to Mother, Employed as Matron at Agricultural College.**

2. Where a mother employed as a matron at a state agricultural college had made arrangements to keep her three year old son there with her, and he would be enabled, while there, to attend a kindergarten a portion of each day and associate with other children, and the father, if awarded the custody, would have to intrust his care to a stranger hired for that purpose, *held* that the custody of such child should be given to its mother.

Divorce—Word "Temporary" in Decree Awarding Custody of Child
not a Qualification, Since All Such Decrees may be Modified.

3.  A decree, awarding the temporary custody of a child to its
mother, is not qualified by the use of the term "temporary," since all
such decrees are continually subject to the order of the court as
new developments arise, which may necessitate changes for the best
interest of the children involved.

From Multnomah: W. N. GATENS, Judge.

Department 1.

MODIFIED.    REHEARING DENIED.

For appellant there was a brief and oral arguments
by *Mr. L. E. Schmitt* and *Mr. Harrison Allen.*

For respondent there was a brief over the names
of *Mr. Frederick M. De Neffe, Mr. Jay Bowerman*
and *Mr. V. A. Crum,* with an oral argument by *Mr.
De Neffe.*

BURNETT, C. J.—This proceeding is a contest
about the custody of a child, commenced after a
divorce suit in which the plaintiff was awarded a
divorce from the defendant, conditioned that he pay
her $3,000 alimony; that she have the temporary cus-
tody of their infant son, then of the age of three
and one-half years; and that the plaintiff pay to the
defendant $30 per month for the support of the
child.  The decree was the result of the court's ad-
vice during the taking of the testimony and before
it was finished that the parties imparl and arrive
at some conclusion.  After considerable conference
between the litigants, their attorneys and the presid-
ing judge, the decree mentioned was entered without
taking any further testimony.  All of this occurred
in the Circuit Court of Multnomah County.

One of the provisions of the decree was that the
child should not be removed from the jurisdiction of

the court without the consent of both parties, leaving it to the court what should be considered reasonable in the premises in the event of any disagreement. It seems that the basis upon which the temporary custody of the child was awarded to the defendant was her representation that she had a home in Portland where she could keep him. This at the time was literally true, but the fact was, which it appears she concealed from the plaintiff and probably also from the trial judge, that even then she was negotiating for a position as matron or house-mother at one of the dormitories at the Oregon Agricultural College at Corvallis. She says in her testimony in this proceeding that she had arranged to have the child with her there; to send him for two and one-half hours every day to a kindergarten where he would meet other children; and that her main duties in the position mentioned would be performed after he had retired at night. It appears in testimony that, after the decree was granted, she applied through her attorneys for the plaintiff's consent to take the child to Corvallis, which he refused, and on her application to the judge for such permission he likewise refused. As the parties with whom she was living at the time in Portland were preparing to go to an eastern state, she made arrangements with a man and his wife with whom she was acquainted to take the child, and she paid for his keep for two weeks, whereupon she went to Corvallis. Meanwhile the plaintiff had made inquiry at the place where the defendant had been residing with the little boy, and at first was unable to find any trace of them. At length he obtained an address which he says was fictitious, but ultimately after some search discovered the whereabouts of the boy and was informed by the parties in charge that

the mother had left him there and had gone away, but they did not know where she had gone or when she would return. Under the circumstances the plaintiff took the child away with him and did not return him at the time appointed. Upon learning this, the defendant returned from Corvallis and began this proceeding by application to the judge, or affidavit, to modify the decree so as to give her the absolute custody of the child. The plaintiff made like application, showing to the court that he still occupied the home in which he and the defendant lived prior to the divorce and had secured the services of a matron well qualified to care for the child, whose practically sole duty would be to look after the boy, and had besides a Japanese chef who cooked and kept house for him. He claimed this arrangement would result in good for the child and give him a home where he would be under the immediate supervision of the plaintiff, his father.

The plaintiff is a physician with a large practice calling him away from home most of the time. He charges and gives considerable evidence that the defendant is slovenly in her personal habits and in her care of the child. This is controverted to some extent on the part of the defendant, and she makes counter charges that the plaintiff disturbs the child's digestion by feeding him candy just before meals, and keeps him awake when he ought to be in bed asleep. The people with whom she left the child had been her acquaintances for about four years. They had no children of their own but had reared two girls, relatives of theirs. It does not appear that the woman employed by the plaintiff has any particular skill or aptitude for managing children.

1. It is disclosed that the reason the defendant did

not take the child to Corvallis with her was that the judge and the plaintiff refused to allow her to do so. With regard to taking the child from the jurisdiction of the court, it would not have been a violation of the decree for the defendant to take him anywhere in the state. The Circuit Court of Multnomah County had rightly assumed jurisdiction over the parents, parties to the divorce proceeding, and the child involved, and, having this authority, it would extend to any place within the state of Oregon. This doctrine is laid down in an analogous case of *Bowers* v. *Grant,* 78 Or. 390 (153 Pac. 412), the only difference between that case and this being that the one cited was a proceeding in the juvenile department of the Multnomah County Circuit Court. But the principle is the same, that any court having properly taken jurisdiction of a cause has a right to continue the same to the exclusion of any other court.

2. The situation presents itself, then, substantially in the following form: The defendant, to whom was awarded the temporary custody of the child, had prepared a place apparently suitable for the purpose, in which she could have him with her and give him her personal attention. She was prevented from taking him to the place by the refusal of the plaintiff and the trial judge to consent thereto. She was not to blame for this wrong conception of the effect of the decree. The plaintiff, on the other hand, while he would have in some degree a personal supervision over the wants of his son, would be compelled to rely more or less upon the ministrations of a woman strange to the child who naturally would not bestow upon him the full measure of affection innate in every mother's breast. We remember the well-settled principle that in such cases the welfare of the

child is of paramount importance and that the bickerings and heartburnings of the parents as to each other are to be relegated to the background. Manifestly, no decree that the court could make could supply the place of the ministrations which loving and affectionate parents agreeable to each other can bestow upon their offspring. We can only take the facts of each particular case and, often by a very narrow margin, decide what can best be derived from a situation which is at the least a domestic tragedy. Ordinarily a child of this boy's age ought to be left with the mother, for the reason that usually the mother will give him more solicitous attention, and naturally so, than the father. In other words, mother-love is generally more tender than that of the father, no matter how well-meaning and affectionate the masculine heart may be. In this instance it would seem that if he is continually in the immediate care of his mother, as it appears he will be at Corvallis, the boy, for the present at least, will be in a better situation as to parental ministrations, than if he were in charge of a strange woman at the home from which his father necessarily is absent most of the time.

Neither parent ought to be deprived entirely of the society of the child. After careful deliberation upon the testimony we conclude that the decree of the Circuit Court ought to be modified so that the custody of the child will be awarded to the mother, the defendant, subject to the proviso that for Saturdays and Sundays of each alternate week, beginning with the entry of the mandate of this court in the Circuit Court, the father shall have the right to take the child with him wherever he may wish in the State of Oregon, returning him to the custody of the mother at all other times. This will probably not interfere

with the child's proper attendance at school. The father must continue to pay to the clerk of the Circuit Court of Multnomah County on the first day of each calendar month the sum of thirty dollars for the support of the child.

3. The term "temporary" as used in the original decree of the court adds nothing to that determination by way of qualification. In all cases, and it is unnecessary to cite precedents thereto, the custody of the children of a divorced couple is subject continually to the orders of the court as new developments arise, and the parties should bear in mind that in case any change of circumstances may warrant it, either may apply to the Circuit Court of Multnomah County for a modification of the order as to that feature, so that the best interests of the children may be preserved. The order allowing the father to have custody of the child on Saturdays and Sundays of alternate weeks is a mere working basis, in a sense arbitrary in its nature, which itself even may be changed, should future circumstances warrant. The decree is modified accordingly, and neither party will be allowed to recover costs or disbursements from the other in this proceeding, either in this or in the Circuit Court.        MODIFIED. REHEARING DENIED.

MCBRIDE, HARRIS and RAND, JJ., concur.